# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>WORLEY & OBETZ, INC., *et al.*,[1]<br><br>Debtors. | Chapter 7<br><br>Case No. 18-13774 (MDC)<br>(Jointly Administered)<br><br>**Hearing Date: July 17, 2019 at 12:30 p.m.**<br>**Objections Due: July 10, 2019 at 4:00 p.m.** |

## CHAPTER 7 TRUSTEE'S MOTION FOR ORDER PURSUANT TO 11 U.S.C. §§ 105, 726, AND FED. R. BANKR. P. 9019 (I) APPROVING ALLOCATION AND PAYMENT OF AN INTERIM DISTRIBUTION TO FULTON BANK, N.A.; AND (II) AUTHORIZING THE TRANSFER OF FUNDS AMONG DEBTOR BANK ACCOUNTS

Christine C. Shubert (the "Trustee"), the Chapter 7 trustee for the jointly administered estates of Worley & Obetz, Inc., *et al.* (the "Debtors"), by and through her undersigned counsel, Fox Rothschild LLP, respectfully requests the entry of an order pursuant to 11 U.S.C. §§ 105, 726, and Fed. R. Bankr. P. 9019 (i) approving the payment of the Interim Distribution (as defined below) to Fulton Bank, N.A. ("Fulton Bank" or "Lender"); and (ii) authorizing the Trustee to transfer funds among Debtor bank accounts (the "Motion"). In support of the Motion, the Trustee respectfully states as follows:

### JURISDICTION

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) & (O).

---

[1] The Debtors is these cases, along with the last four digits of their federal tax identification numbers are (i) Worley & Obetz, Inc. (6576) (Case No. 18-13774-REF); (ii) Americomfort, Inc. (7605) (Case No. 18-13775-REF); (iii) RPHAC, Inc. (9625) (Case No. 18-13776-REF); (iv) Amerigreen Energy, Inc. (6284) (Case No. 18-13777-REF); (v) Advance Air, Inc. (8111) (Case No. 18-13778-REF); (vi) Amerigreen Energy Brokers, LLC (2358) (Case No. 18-13779-REF); (vii) Amerigreen Electricity, LLC (8977) (Case No. 18-13780-REF); (viii) Amerigreen Hedging Services, LLC (8549) (Case No. 18-13781-REF); (ix) Amerigreen Lubricants, LLC (7489) (Case No. 18-13782-REF); (x) Amerigreen Natural Gas, LLC (3222) (Case No. 18-13783-REF); and (xi) Amerigreen Propane, LLC (Case No. 18-13784-REF).

1

2.    Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    The statutory predicates in support of the relief requested herein are 11 U.S.C. §§ 105, 726, and Fed. R. Bankr. P. 9019.

## BACKGROUND

### A.    Bankruptcy Procedural History

4.    On  June 6, 2018 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Pennsylvania.

5.    On the same day, the Office of the United States Trustee appointed the Trustee as chapter 7 trustee, which appointment remains in effect.

6.    On June 19, 2018, the Court entered an order directing the joint administration of the Debtors' bankruptcy cases for procedural purposes only pursuant to Fed. R. Bankr. P. 1015(b) [D.I. 75].

### B.    Debtors' Business Operations

7.    Prior to the Petition Date, as more fully described in the *Chapter 7 Trustee's Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 105(a) and 363(b) Authorizing the Trustee to Use Property of the Estates to Pay Wages, Costs, and Other Post-Petition Operating Expenses Necessary to Preserve and Maintain the Debtors' Assets During the Sale Process* (the "363 Motion"), Debtor Worley & Obetz, Inc. ("Debtor W&O"), Debtor Americomfort, Inc. ("Debtor Americomfort"), and Debtor RPHAC, Inc. ("Debtor Ranck Plumbing") operated as a total energy provider, and provided certain energy products and services to their commercial and residential clients, including, but not limited to:

2

a.    Fuel, gasoline, biodiesel, heating oil, kerosene, naptha, propane, and other forms of renewable energy;

b.    Electricity and natural gas;

c.    HVAC installation, repair, maintenance, and service; and

d.    Plumbing system installation, repair and maintenance.

8.    Upon information and belief, Debtor Ranck Plumbing operated as a direct and/or indirect subsidiary of Debtor Americomfort and Debtor W&O.

9.    Moreover, Debtor Amerigreen Energy and the Amerigreen Subsidiaries[2] operated as an energy wholesaler to retail distributors operating in the Mid-Atlantic and New England markets and provided certain energy products and services to their retail fuel distributors, fuel stations, commercial clients, and commercial and residential clients of Debtor W&O, including, but not limited to, the following:

a.    Ethanol and biodiesel inventory supply and delivery to retail fuel distributors and commercial clients;

b.    Hedging and marketing services to fuel distributor customers;

c.    Electricity and natural gas plans to commercial and residential clients;

d.    Delivery and supply to Debtor W&O commercial and residential customers of Amerigreen fuel, biodiesel, biofuels, petroleum, and diesel fuels; and

e.    Operate, supply and delivery of Amerigreen energy products to Amerigreen stations.

---

[2] Debtor Amerigreen Energy, Inc. ("Debtor Amerigreen Energy") is the 100% owner and parent of Advance Air, Inc. ("Debtor Advance Air"), Debtor Amerigreen Energy Brokers, LLC ("Debtor AG Brokers"), Amerigreen Electricity, LLC ("Debtor AG Electric"), Amerigreen Hedging Services, LLC ("Debtor AG Hedging"), Amerigreen Lubricants, LLC ("Debtor AG Lubricants"), Amerigreen Natural Gas, LLC ("Debtor AG Natural Gas"), and Debtor Amerigreen Propane, LLC ("Debtor AG Propane" and collectively with Debtor Advance Air, Debtor AG Brokers, Debtor AG Electric, Debtor AG Hedging, Debtor AG Lubricants, and Debtor AG Natural Gas, the "Amerigreen Subsidiaries).

C.     <u>Sales of Substantially All of Debtor Ranck Plumbing's Assets to RRAC, LLC</u>

10.     On June 18, 2018, the Trustee filed a *Motion for an Order Pursuant to 11 U.S.C. §§ 105(a), 363(b) and 365 (A) Authorizing the Trustee to Sell Certain Assets Free and Clear of All Liens, Claims, Interests, and Encumbrances Not Specifically Assumed; (B) Approving Agreement of Sale and Assumption and Assignment of Other Agreements Related Thereto; (C) Authorizing Trustee to Consummate All Transactions Contemplated by Such Agreement; and (D) Granting Related Relief* [D.I. 60], therein seeking the Court's authorization to sell substantially all of Debtor Ranck Plumbing's assets pursuant to that certain Asset Purchase Agreement by and between the Trustee and RRAC, LLC, dated June 25, 2018 (the "<u>Ranck APA</u>").

11.     On June 28, 2018, this Court entered an *Order Pursuant to 11 U.S.C. §§ 105(a), 363(b) and 365 (A) Authorizing the Trustee to Sell Certain Assets Free and Clear of All Liens, Claims, Interests, and Encumbrances Not Specifically Assumed; (B) Approving Agreement of Sale and Assumption and Assignment of Other Agreements Related Thereto; (C) Authorizing Trustee to Consummate All Transactions Contemplated by Such Agreement; and (D) Granting Related Relief*, therein approving the Ranck APA.

12.     Pursuant to the Ranck APA, the purchase price for the Acquired Assets (as defined in the Ranck APA) was $1,640,000.00. Subsequent to the sale, however, it was discovered that the Acquired Assets inadvertently included a vehicle owned by Debtor W&O, not Debtor Ranck Plumbing, which was valued at $24,200.92 (the "<u>W&O Vehicle</u>"). The Acquired Assets did not include Debtor Ranck Plumbing's accounts receivable ("<u>Ranck A/R</u>").

13.     On July 18, 2018, the Trustee for a *Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 105(a) and 363(b), and Rule 6004 of the Federal Rules of Bankruptcy Procedure (A) Authorizing the Trustee to Sell Certain Assets Free and Clear of All Liens, Claims, Interests, and*

Active\96059759.v3-6/18/19

*Encumbrances, and (B) Granting Related Relief* [D.I. 188], therein seeking the Court's authorization to sell the Ranck A/R pursuant to that certain Bill of Sale by and between the Trustee and RRAC, LLC (the "Bill of Sale").

14.    On August 14, 2018, this Court entered an *Order Pursuant to 11 U.S.C. §§ 105(a) and 363(b), and Rule 6004 of the Federal Rules of Bankruptcy Procedure (A) Authorizing the Trustee to Sell Certain Assets Free and Clear of All Liens, Claims, Interests, and Encumbrances, and (B) Granting Related Relief* [D.I. 321], therein approving the Bill of Sale.

15.    Pursuant to the Bill of Sale, the purchase price for the Ranck A/R was $228,821.69.

16.    Additionally, the Trustee collected $67,966.45 in accounts receivable that the Trustee expressly excluded from the Bill of Sale.

17.    The aggregate amount of the proceeds from the sales and collection of Debtor Ranck Plumbing's Assets, less the value of the W&O Vehicle, is $1,912,587.22 (the "Ranck Sale Proceeds").

**D.    Sale of Substantially All of Debtors' Remaining Assets to Direct Diesel Holdings, Inc.**

18.    On August 24, 2018, the Trustee filed a *Motion for (I) an Order (A) Approving Bidding Procedures, Including Break-Up Fee and Expense Reimbursement; (B) Scheduling Bid Deadline, Auction Date, and Sale Hearing and Approving Notice Thereof; and (C) Approving Procedures to Fix Cure Amounts Related to Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and Approving Notice Thereof; and (II) and Order Approving (A) the Sale of Substantially All of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Liabilities and (B) the Assumption, Sale and Assignment to Buyer of Certain Contracts of Debtors* (the "Bidding Procedures Motion") [D.I. 353].

5

19.      On August 29, 2018, the Court approved the Bidding Procedures Motion (the "Bidding Procedures Order") [D.I. 373].

20.      Pursuant to the Bidding Procedures Order, the Trustee conducted an auction of substantially all of the Debtors' assets on September 17, 2018 (the "Auction"). At the conclusion of the Auction, Diesel Direct Holdings, Inc. ("Diesel Direct") was the highest prevailing bidder (the "DD Sale").

21.      On September 18, 2018, the Court entered an *Order (A) Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Interests, Claims, and Encumbrances; (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (C) Granting Certain Related Relief* (the "Sale Order") [D.I. 427], therein approving that certain Asset Purchase Agreement by and between the Trustee and Direct Diesel (the "APA").

22.      As set forth in the Sale Order and the APA, the gross sale proceeds totaled $10,670,000.00 (the "DD Sale Proceeds").

23.      Following the Ranck Sale and the DD Sale, on November 29, 2018, the Court entered an Order authorizing the Trustee to make a first interim distribution of the Net Allocable Proceeds (as defined therein) to Fulton Bank based on a mutually agreed upon allocation methodology, Fulton Bank's security interests (as more fully set forth below), and the order of payment set forth in the Stipulation and Order (as defined below), in the amount of $9,227,785.00, broken down as follows:

- Debtor W&O - $5,656,109.00
- Debtor Amerigreen Energy - $2,779,252.00
- Debtor Ranck Plumbing - $792,424.00

[D.I. 574] (the "First Interim Distribution").

6

25.     Following the First Interim Distribution, the Trustee discovered additional fuel owned by the Debtors that the Trustee believed Direct Diesel was obligated to purchase under the APA.  Diesel Direct disputed this obligation, which ultimately resulted in the execution and approval of a Settlement Agreement and Release for a settlement sum of $225,000.00 (the "Fuel Proceeds", and together with the DD Sale Proceeds and the Ranck Sale Proceeds, the Sale Proceeds").

26.     Less amounts payable under the Sale Order, the gross Sale Proceeds total $12,520,821.69 ("Gross Sale Proceeds").

**E.     Generation of Remaining Estate Proceeds**

27.     As of April 30, 2019, the Trustee has generated $9,915,612.02—in addition to the Sale Proceeds—from the collection of accounts receivable, other individual asset sales, and tax refunds, among other things (the "Remaining Proceeds").

28.     The Trustee anticipates that additional proceeds will be generated through the continued collection of accounts receivables, receipt of additional tax refunds, pending litigation against, *inter alia*, the Debtors' pre-petition insiders, and other adversarial proceedings against third-parties, among other things.

**F.     Certain Debtors' Grant of Security Interest**

(i).     Debtor W&O Loan Facilities

28.     Prior to the Petition Date, pursuant to the terms and conditions set forth in that certain Amended and Restated Multi-Facility and Security Agreement by and between Debtor W&O and Lender, dated February 16, 2017, as modified by that certain First Loan Modification Agreement by and between the Debtor W&O and Lender, dated March 22, 2017, that certain Second Loan Modification Agreement, dated May 2, 2017, that certain Third Loan Modification

7

Agreement by and between Debtor W&O, dated June 28, 2017, that certain Fourth Loan

Modification Agreement by and between Debtor W&O and Lender, dated July 17, 2017, that

certain letter agreement by and between Debtor W&O and Lender, and that certain Sixth Loan

Modification Agreement by and between Debtor W&O, Debtor Amerigreen Energy, and Lender,

dated October 17, 2017, and that certain Sixth Loan Modification Agreement by and between

Debtor W&O and Lender, dated January 19, 2018 (together with any amendments, restatements,

and/or modifications thereof or thereto, the "W&O Loan Agreement"), Lender extended certain

financing to Debtor W&O consisting of: (i) a revolving credit loan in the maximum principal

amount of up to $19,500,000 (the "W&O Primary Revolving Credit"), as evidenced by that certain

Primary Revolving Credit Note by Debtor W&O in favor of Lender, dated February 16, 2017

(together with any amendments, restatements and/or modifications thereof or thereto, the "W&O

Primary Revolver Note") (ii) a revolving credit loan in the maximum principal amount of

$8,500,000 (the "W&O Secondary Revolving Credit"), as evidenced by that certain Secondary

Revolver Note by Debtor W&O in favor of Lender, dated February 16, 2017, as modified by that

certain Amended and Restated Secondary Revolving Credit Note by Debtor W&O in favor of

Lender, dated May 2, 2017, and that certain Amended and Restated Secondary Revolving Credit

Note by Debtor W&O in favor of Lender, dated January 19, 2018 (together with any amendments,

restatements and/or modifications thereof or thereto, the "W&O Secondary Revolver Note"); (iii)

a term loan in the principal amount of $15,000,000 (the "W&O Term Loan"), as evidenced by that

certain Term Note by Debtor W&O in favor of Lender, dated February 16, 2017 (together with

any amendments, restatements and/or modifications thereof or thereto, the "W&O Term Note"),

(iv) a term loan in the principal amount of $2,000,000 (the "W&O Secondary Term Loan"), as

evidenced by that certain Secondary Term Note by Debtor W&O in favor of Lender, dated March

22, 2017 (together with any amendments, restatements and/or modifications thereof or thereto, the "W&O Secondary Term Note"), and (v) a term loan in the principal amount of $3,000,000 (the "W&O Temporary Facility"), as evidenced by that certain Temporary Facility Note by Debtor W&O in favor of Lender, dated June 28, 2017 (together with any amendments, restatements and/or modifications thereof or thereto, the "W&O Temporary Facility Note").

29.     Additionally, pursuant to that certain Guaranty and Suretyship Agreement, dated February 16, 2017 (together with any amendments, restatements, and/or modifications thereof or thereto, the "Amerigreen Guaranty"), Debtor Amerigreen Energy irrevocably, absolutely, and unconditionally guaranteed, and became surety for, the full, complete, prompt, and punctual payment and performance of all of the indebtedness of the Debtor W&O to Lender with respect to the W&O Primary Revolving Credit, the W&O Secondary Revolving Credit, the W&O Term Loan, the W&O Secondary Term Loan, and the W&O Temporary Facility.

30.     Under that certain Security Agreement, dated October 17, 2017, (together with any amendments, restatements, and/or modifications thereof or thereto, the "Amerigreen Security Agreement"), Debtor Amerigreen Energy granted Lender a lien on and security interest in all or substantially of its assets to secure its obligations under the Amerigreen Guaranty.

31.     Under the terms and conditions set forth in that certain Business Loan Agreement by and between Debtor W&O and Lender, dated August 9, 2013 (together with any amendments, restatements, and/or modifications thereof or thereto, the "W&O $3,000,000 Business Loan Agreement"), Lender made a loan to Debtor W&O in the original principal sum of $3,000,000 (the "W&O $3,000,000 Loan"), as evidenced by that certain Promissory Note by Debtor W&O in favor of Lender, dated August 9, 2013, in the original principal amount of $3,000,000 (together with any

9

amendments, restatements, and/or modifications thereof or thereto, the "W&O $3,000,000 Promissory Note").

32.     Furthermore, pursuant to the terms and conditions set forth in that certain Business Loan Agreement by and between Debtor W&O and Lender, dated January 2, 2015 (together with any amendments, restatements, and/or modifications thereof or thereto, the "W&O $1,850,000 Business Loan Agreement"), Lender made a loan to Debtor W&O in the original principal sum of $1,850,000 (the "W&O $1,850,000 Loan"), as evidenced by that certain Promissory Note by Debtor W&O in favor of Lender, dated January 2, 2015, in the original principal amount of $1,850,000 (together with any amendments, restatements, and/or modifications thereof or thereto, the "W&O $1,850,000 Promissory Note").

33.     Pursuant to the terms and conditions set forth in that certain Term Loan and Security Agreement by and between Debtor W&O and Lender, dated May 25, 2016 (together with any amendments, restatements, and/or modifications thereof or thereto, the "W&O $1,000,000 Term Loan and Security Agreement"), Lender made a loan to Debtor W&O in the original principal sum of $1,000,000 (the "W&O $1,000,000 Loan"), as evidenced by that certain Term Note by Debtor W&O in favor of Lender, dated May 25, 2016, in the original principal amount of $1,000,000 (together with any amendments, restatements, and/or modifications thereof or thereto, the "W&O $1,000,000 Promissory Note").

34.     Additionally, pursuant to the terms and conditions set forth in that certain Term Loan and Security Agreement by and between Debtor W&O and Lender, dated September 9, 2016 (together with any amendments, restatements, and/or modifications thereof or thereto, the "W&O $1,000,000 Term Loan and Security Agreement #2"), Lender made a loan to Debtor W&O in the original principal sum of $1,000,000 (the "W&O $1,000,000 Loan #2"), as evidenced by that

10

certain Term Note by Debtor W&O in favor of Lender, dated September 9, 2016, in the original

principal amount of $1,000,000 (together with any amendments, restatements, and/or

modifications thereof or thereto, the "W&O $1,000,000 Promissory Note #2").

35.    Under the terms and conditions set forth in that certain Business Loan Agreement

by and between Debtor W&O and Lender, dated December 21, 2005 (together with any

amendments, restatements, and/or modifications thereof or thereto, the "W&O $1,000,000

Business Loan Agreement"), Lender made a line of credit in the maximum aggregate principal

amount of $1,000,000 available to Debtor W&O (the "W&O $1,000,000 Line of Credit"), as

evidenced by that certain Promissory Note by Debtor W&O in favor of Lender, dated December

21, 2005, in the original maximum principal amount of $1,000,000 (together with any

amendments, restatements, and/or modifications thereof or thereto, the "W&O $1,000,000

Promissory Note (Line of Credit)").

36.    Pursuant to the terms and conditions set forth in that certain Business Loan

Agreement by and between Debtor W&O and Lender, dated August 29, 2011 (together with any

amendments, restatements, and/or modifications thereof or thereto, the "W&O $3,000,000

Business Loan Agreement"), Lender made a line of credit in the maximum aggregate principal

amount of $3,000,000 available to Debtor W&O (the "W&O $3,000,000 Line of Credit"), as

evidenced by that certain Promissory Note by Debtor W&O in favor of Lender, dated August 29,

2011, in the maximum principal amount of $3,000,000 (together with any amendments,

restatements, and/or modifications thereof or thereto, the "W&O $3,000,000 Promissory Note

(Line of Credit)").

37.    The W&O Primary Revolving Credit, the W&O Secondary Revolving Credit, the

W&O Term Loan, the W&O Secondary Term Loan, the W&O Temporary Facility, the W&O

11

$3,000,000 Loan, the W&O $1,850,000 Loan, the W&O $1,000,000 Loan, the W&O $1,000,000

Loan #2, the W&O $1,000,000 Line of Credit, and the W&O $3,000,000 Line of Credit are

hereinafter referred to each as a "W&O Loan" and collectively as the "W&O Loans".  The W&O

Loan Agreement, the W&O Primary Revolver Note, the W&O Secondary Revolver Note, the

W&O Term Note, the W&O Secondary Term Note, the W&O Temporary Facility Note, the W&O

$3,000,000 Business Loan Agreement, the W&O $3,000,000 Promissory Note, the W&O

$1,850,000 Business Loan Agreement, the W&O $1,850,000 Promissory Note, the W&O

$1,000,000 Term Loan and Security Agreement, the W&O $1,000,000 Promissory Note, the

W&O $1,000,000 Term Loan and Security Agreement #2, the W&O $1,000,000 Promissory Note

#2, the W&O $1,000,000 Business Loan Agreement, the W&O $1,000,000 Promissory Note (Line

of Credit), the W&O $3,000,000 Business Loan Agreement, the W&O $3,000,000 Promissory

Note (Line of Credit), the Amerigreen Guaranty, the Amerigreen Security Agreement, and all other

related instruments, agreements, and other documents, whether now or hereafter existing, executed

in connection with the W&O Loans are hereinafter referred to collectively as the "W&O Loan

Documents".

   (ii).  <u>Debtor Amerigreen Energy Loan Facilities</u>

  38.  Pursuant to the terms and conditions set forth in that certain Amended and Restated

Multi-Facility Loan and Security Agreement by and between Debtor Amerigreen Energy and

Lender, dated February 16, 2017, as modified by that certain Loan Modification Agreement by

and between Debtor Amerigreen Energy and Lender, dated May 2, 2017 (together with any

amendments, restatements, and/or modifications thereof or thereto, the "Amerigreen Loan and

Security Agreement"), Lender extended certain financing to Debtor Amerigreen Energy consisting

of: (i) a revolving credit loan in the maximum original principal amount of $7,000,000 (the

"Amerigreen Primary Revolving Credit") as evidenced by that certain Primary Revolving Credit

Note by Debtor Amerigreen Energy in favor of Lender, dated February 16, 2017, in the maximum

original principal amount of $7,000,000  (together with any amendments, restatements, and/or

modifications thereof or thereto, the "Amerigreen Primary Revolver Note"), and (ii) a revolving

credit loan in the maximum original principal amount of $8,000,000 (the "Amerigreen Secondary

Revolving Line"), as evidenced by that certain Secondary Revolving Credit Note by Debtor

Amerigreen Energy in favor of Lender, dated February 16, 2017, in the maximum original

principal amount of $8,000,000 (together with any amendments, restatements and/or modifications

thereof or thereto, the "Amerigreen Secondary Revolver Note").

39.    Under the terms and conditions set forth in that certain Business Loan Agreement

by and between Debtor Amerigreen Energy and Lender, dated August 9, 2011, as modified by that

certain Supplement to Business Loan Agreement by and between Debtor Amerigreen Energy and

Lender, dated March 1, 2012, that certain Supplement to Business Loan Agreement by and

between Debtor Amerigreen Energy and Lender, dated February 28, 2013, that certain Supplement

to Business Loan Agreement by and between Debtor Amerigreen Energy and Lender, dated April

11, 2014, and that certain Supplement to Business Loan Agreement by and between Debtor

Amerigreen Energy and Lender, dated April 1, 2015 (together with any amendments, restatements

and/or modifications thereof or thereto, the "Amerigreen $3,000,000 Business Loan Agreement"),

Lender extended a loan to Debtor Amerigreen Energy in the maximum principal amount of

$3,000,000 (the "Amerigreen $3,000,000 Loan"), as evidenced by that certain Promissory Note

by Debtor Amerigreen Energy in favor of Lender, dated August 9, 2011, in the maximum principal

amount of $3,000,000, as modified by that certain Supplement to Promissory Note by Debtor

Amerigreen Energy in favor of Lender, dated October 27, 2011, that certain Supplement to

Promissory Note by Debtor Amerigreen Energy in favor of Lender, dated March 1, 2012, that

certain Supplement to Promissory Note by Debtor Amerigreen Energy in favor of Lender, dated

May 25, 2012, that certain Supplement to Promissory Note by Debtor Amerigreen Energy in favor

of Lender, dated February 18, 2013, that certain Supplement to Promissory Note by Debtor

Amerigreen Energy in favor of Lender, dated April 11, 2014, that certain Supplement to

Promissory Note by Debtor Amerigreen Energy in favor of Lender, dated January 27, 2017, and

that certain Supplement to Promissory Note by Debtor Amerigreen Energy in favor of Lender,

dated January 19, 2018 (together with any amendments, restatements, and/or modifications thereof

or thereto, the "Amerigreen $3,000,000 Promissory Note").

40.     Under the terms and conditions set forth in that certain Business Loan Agreement

by and between Debtor Amerigreen Energy and Lender, dated April 15, 2016 (together with any

amendments, restatements, and/or modifications thereof or thereto, the "Amerigreen $150,000

Business Loan Agreement"), Lender made a loan to Debtor Amerigreen Energy in the original

principal sum of $150,000 (the "Amerigreen $150,000 Loan"), as evidenced by that certain

Promissory Note by Debtor Amerigreen Energy in favor of Lender, dated April 15, 2016, in the

original principal amount of $150,000 (together with any amendments, restatements, and/or

modifications thereof or thereto, the "Amerigreen $150,000 Promissory Note").

41.     Also, pursuant to the terms and conditions set forth in that certain Business Loan

Agreement by and between Debtor Amerigreen Energy and Lender, dated April 27, 2017 (together

with any amendments, restatements, and/or modifications thereof or thereto, the "Amerigreen

$95,000 Business Loan Agreement"), Lender made a loan to Debtor Amerigreen Energy in the

original principal sum of $95,000 (the "$95,000 Loan" and collectively with the Amerigreen

Primary Revolving Credit, the Amerigreen Secondary Revolving Line, the Amerigreen $3,000,000

14

Loan, and the Amerigreen $150,000 Loan, the "<u>Amerigreen Loans</u>"), as evidenced by that certain

Promissory Note (the "<u>$95,000 Promissory Note</u>") by Debtor Amerigreen Energy in favor of

Lender, in the original principal amount of $95,000. The Amerigreen Loan and Security

Agreement, the Amerigreen Primary Revolver Note, the Amerigreen Secondary Revolver Note,

the Amerigreen $3,000,000 Business Loan Agreement, the Amerigreen $3,000,000 Promissory

Note, the Amerigreen $150,000 Business Loan Agreement, the Amerigreen $150,000 Promissory

Note, the Amerigreen $95,000 Business Loan Agreement and the Amerigreen $95,000 Promissory

Note, and all other related instruments, agreements, and other documents, whether now or hereafter

existing, executed in connection with the Amerigreen Loans are hereinafter referred to collectively

as the "<u>Amerigreen Loan Documents</u>".

     (iii).    <u>Debtor Americomfort and Ranck Plumbing Loan Facilities</u>

     42.    Pursuant to the terms and conditions set forth in that certain Revolving Credit Loan

and Security Agreement by and between Debtor W&O, Debtor Americomfort and Lender, as

modified by that certain First Loan Modification Agreement by and between Debtor W&O, Debtor

Americomfort, Debtor Ranck Plumbing, and Lender, dated June 30, 2017, and that certain Joinder

by and between Debtor Ranck Plumbing and Lender, dated June 30, 2017 (together with any

amendments, restatements, and/or modifications thereof or thereto, the "<u>Americomfort/Ranck</u>

<u>Plumbing Revolver Loan Agreement</u>"), Lender extended a revolving credit loan to Debtor W&O,

Debtor Americomfort, and Debtor Ranck Plumbing in the maximum principal amount of up to

$1,000,000 (the "<u>Americomfort/Ranck $1,000,000 Revolver Loan</u>"), as evidenced by that certain

Revolving Credit Note by Debtor W&O and Debtor Americomfort in favor of Lender, dated

February 16, 2017, in the maximum principal amount of $1,000,000, as modified by that certain

Amended and Restated Revolving Credit Note by Debtor W&O, Debtor Americomfort, and

Debtor Ranck Plumbing in favor of Lender, dated June 30, 2017, in the maximum principal amount of $1,000,000 (together with any amendments, restatements, and/or modifications thereof or thereto, the "Americomfort/Ranck $1,000,000 Revolver Note").

43.    Pursuant to the terms and conditions set forth in that certain Term Loan and Security Agreement by and between Debtor Americomfort, Debtor Ranck Plumbing and Lender (together with any amendments, restatements, and/or modifications thereof or thereto, the "Americomfort/Ranck Plumbing Term Loan Agreement"), Lender made a term loan to Debtor Americomfort and Debtor Ranck Plumbing in the original principal balance of $2,100,000 (the "Americomfort/Ranck Plumbing Term Loan" and collectively with the Americomfort/Ranck Plumbing $1,000,000 Revolver Loan, the "Americomfort/Ranck Plumbing Loans"), as evidenced by that certain Term Note by Debtor Americomfort and Debtor Ranck Plumbing in favor of Lender, effective as of June 30, 2017, in the original principal balance of $2,100,000 (the "Americomfort/Ranck Plumbing Term Note").  The Americomfort/Ranck Plumbing Revolver Loan Agreement, the Americomfort/Ranck Plumbing $1,000,000 Revolver Note, the Americomfort/Ranck Plumbing Term Loan Agreement, and the Americomfort/Ranck Plumbing Term Note, and all other related instruments, agreements and other documents, whether now or hereafter existing, executed in connection with the Amerigreen Loans are hereinafter referred to collectively as the "Americomfort/Ranck Plumbing Loan Documents".[3]

---

[3]  The W&O Loan Documents, the Amerigreen Loan Documents, and the Americomfort/Ranck Plumbing Loan Documents are hereinafter sometimes referred to collectively as the "Loan Documents".  Pursuant to the various guaranty agreements, the Debtor W&O also irrevocably, absolutely, and unconditionally guaranteed, and became surety for, the full, complete, prompt, and punctual payment and performance of all of the indebtedness owed by the following entities to Lender with respect to certain loans made by Lender to such entities: (a) Lyons & Obetz, a Pennsylvania general partnership, (b) Doe Run Road LLC, a Pennsylvania limited liability company; (c) 149 Doe Run Road LP, a Pennsylvania limited partnership, and (d) 202 Greenfield, LP, a Pennsylvania limited partnership.

(iv).    The Lender Collateral Under Loan Documents

44.    Pursuant to the W&O Loan Documents, and the UCC financing statements filed in connection therewith, along with other security instruments, Fulton Bank has first priority, duly perfected liens upon and security interests in substantially all assets of Debtor W&O, except the Excluded Assets[4] (collectively, the "Lender W&O Collateral").

45.    Additionally, under the Amerigreen Loan Documents, the Amerigreen Security Agreement, and the UCC financing statements filed in connection therewith, along with other security instruments, Fulton Bank has first priority, duly perfected liens upon and security interests in substantially all assets of Debtor Amerigreen Energy, except the Excluded Assets (collectively, the "Lender Amerigreen Collateral").

46.    Furthermore, under the Americomfort/Ranck Plumbing Loan Documents, and the UCC financing statements filed in connection therewith, along with other security instruments, Fulton Bank has first priority, duly perfected liens upon and security interests in substantially all assets of Debtor Ranck Plumbing, except the Excluded Assets (collectively, the "Lender Ranck Plumbing Collateral"), and substantially all of the assets of Debtor Americomfort, except the Excluded Assets (collectively, the "Lender Americomfort Collateral" and together with the Lender W&O Collateral, the Lender Amerigreen Collateral, and the Lender Ranck Plumbing Collateral, the "Lender Collateral").

---

[4] Fulton Bank does not have perfected liens upon or perfected security interests in the "Excluded Assets", which are collectively defined in the Stipulation and Order as follows:

(i) certain titled vehicles, trucks, trailers, fuel tankers, and betterments (collectively, the "Vehicles") to the extent that Lender's security interest in and lien upon the Vehicles is not marked on the title to any Vehicle; (ii) certain real property of a Debtor that is not subject to a recorded mortgage in the name of Lender; (iii) any and all property of the Amerigreen Subsidiaries; (iv) trust accounts; (v) commercial tort claims; (vi) any deposit account for which Lender does not have possession or control thereof; and (vii) any claims, litigation rights, or causes of action pursuant to sections 544, 545, 547, 548, and 550 of the Bankruptcy Code.

(collectively, the "Excluded Assets"). See Stipulation and Order at 13.

47.     As of the Petition Date, the unpaid principal balance and face amount of issued letters of credit outstanding from Debtor W&O, Debtor Amerigreen Energy, Debtor Americomfort, and Debtor Ranck Plumbing under the Loan Documents and related documents was as follows (collectively and together with accrued and unpaid interest, fees, costs and expenses, including, without limitation, attorneys' fees and costs, and all other sums recoverable by Lender under the Loan Documents, the "Fulton Bank Loan Claim"): (1) $52,683,327 owed by Debtor W&O under the W&O Loan Documents, and guaranteed jointly and severally by Debtor Amerigreen Energy and, with respect to the Temporary Facility, by Debtor Ranck Plumbing and Debtor Americomfort, (2) $16,559,042.99 owed by Debtor Amerigreen Energy under the Amerigreen Loan Documents, and guaranteed jointly and severally by Debtor W&O, and (3) $2,337,856.05 owed by Debtor Americomfort and Debtor Ranck Plumbing, jointly and severally (collectively, the "Fulton Bank Loan Claim").

48.     The various loan facilities that were available to the Debtors under the Loan Documents prior to the Petition Date were terminated.

### G.    Joint Stipulation Between the Trustee and Fulton Bank

49.     On June 18, 2018, the Trustee and Fulton Bank entered into a Stipulation and Order (the "Stipulation and Order") which contains, among other things, (1) a comprehensive settlement between the Trustee and Fulton Bank regarding Fulton Bank's rights in, and liens on, the Lender Collateral; (2) the allocation of any proceeds received by the Trustee on account of the collection, sale, liquidation or other disposition of the Lender Collateral; and (3) Fulton Bank's agreement to make available to the Trustee up to $613,690.00 of Cash Collateral (as defined therein) by the Trustee, in order to fund operating expenses, essential maintenance expenditures, and other expenses for the operation and liquidation of the assets of the Debtors (including costs related to

18

the sale processes) (collectively, the "Post-Petition Expenses"), in accordance with the Budget attached to the Stipulation and Order as **Exhibit "A"**.

50.     On June 18, 2018, the Trustee filed the *Motion of Chapter 7 Trustee for Order Approving Stipulation and Order Pursuant to Fed. R. Bankr. P. 4001(B) and 11 U.S.C. § 363(c)(2)(B) Authorizing Use of Cash Collateral on a Limited Basis and Providing Adequate Protection* (the "Motion to Approve Stipulation and Order") [D.I. 57].

51.     On June 25, 2018, the Court approved the Stipulation and Order [D.I. 103].

52.     On August 17, 2018, the Trustee and Fulton Bank entered into a Second Amended Stipulation and Order [D.I. 337] (the "Amended Stipulation and Order"), therein amending paragraph 3(a) of the Stipulation and Order to increase the amount of Cash Collateral by $331,220.00 (the "Amended Budget"). Pursuant to the Amended Stipulation and Order, all other terms and provision of the Stipulation and Order remain the same and are in full force and effect.

53.     On August 21, 2018, the Court approved the Amended Stipulation and Order [D.I. 344].

54.     As set forth in the Stipulation and Order, the Trustee acknowledged and agreed that, as of the Petition Date, (i) Lender's liens upon and security interests in the Lender Collateral are valid, binding, enforceable, and perfected first-priority liens and security interests, and are not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (ii) the Fulton Bank Loan Claim constitutes legal, valid, and binding obligations of the Debtor W&O, Debtor Amerigreen Energy, Debtor Americomfort, and Debtor Ranck Plumbing, enforceable in accordance with and to the extent provided by the terms of the Loan Documents (other than in respect of the stay of enforcement arising from Section 362 of the Bankruptcy Code), and no offsets, defenses or counterclaims to the Fulton Bank Loan Claim

exists, and no portion of the Fulton Bank Loan Claim is subject to avoidance, recoupment, set off, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (iii) the Fulton Bank Loan Claim constitutes an allowed secured claims in Debtor W&O, Debtor Amerigreen Energy, Debtor Americomfort, and Debtor Ranck Plumbing's Chapter 7 Cases of up to the value of the Lender Collateral and an allowed unsecured claim to the extent set forth above in each case for any deficiency claim (the "Deficiency Claim"), all without need for Fulton Bank to file any proof of claim in the Chapter 7 Cases or otherwise. See Stipulation and Order at 15, ¶ 1a.

55.    Furthermore, as set forth in the Stipulation and Order, Fulton Bank acknowledged and agreed that Fulton Bank does not have any lien upon or security interest in the Excluded Assets. See Stipulation & Order at 14.

56.    Pursuant to the Stipulation and Order and Amended Stipulation and Order, Fulton Bank acknowledged and agreed that its liens and security interests in the Lender Collateral and in the Post-Petition Collateral (as defined in the Stipulation and Order), and the Fulton Bank Loan Claim, are subordinate to, and the each Estate shall be entitled to receive from the Lender Collateral and the Post-Petition Collateral of such Estate, first, (i) payment of the Trustee's commission pursuant to 11 U.S.C. § 326 (the "Trustee Commission") and the Trustee Fees and Expenses[5] related to the collection, sale, liquidation, or other disposition of the Lender Collateral or the Post-Petition Collateral of such Estate, which Trustee Commission and Trustee Fees and Expenses shall

---

[5] The "Trustee Fees and Expenses" are defined in the Stipulation and Order as:

>   The fees and expenses of the Trustee and her professionals, to the extent approved and allowed by the Bankruptcy Court and actually paid by the Estates, shall be referred to herein as the "Trustee Fees and Expenses".

Stipulation and Order at 18, ¶ 2d.

Active\96059759.v3-6/18/19

be paid from the proceeds of the collection, sale, liquidation or other disposition of the Lender

Collateral or the Post-Petition Collateral of such Estate to the extent such Trustee Commission and

Trustee Fees and Expenses are related to the collection, sale, liquidation, or other disposition of

the Lender Collateral or the Post-Petition Collateral of such Estate, provided that such Trustee

Fees and Expenses payable to the Trustee's legal counsel and financial advisors/accountants shall

not exceed $750,000.00 in the aggregate for all Estates; second, (ii) payment to Lender in an

amount equal to the amount of Cash Collateral previously used by the Trustee to pay Post-Petition

Expenses pursuant to the Budget related to the Debtor which owned such Lender Collateral or

such Post-Petition Collateral; third, (iii) after and net of payments pursuant to the foregoing

clauses, payment of the Estate Share[6],  which Estate Share shall be distributed to creditors of the

applicable Debtor in accordance with the priorities set forth in Bankruptcy Code (and with

Lender's Deficiency Claim entitled to a pro rata share of any distribution to holders of allowed

general unsecured claims, whether from the Estate Share, from unencumbered assets or otherwise),

and fourth, (iv) after and net of payments pursuant to the foregoing clauses, retained by the Estate

to be used (1) as Cash Collateral, as provided for in the Stipulation and Order for Post-Petition

Expenses set forth on the Budget that have not been previously paid, or (2) payment to Lender

pursuant to separate Order of the Bankruptcy Court.

57.    With respect to the Excluded Assets, subject to the terms and conditions of the

Stipulation and Order and Amended Stipulation and Order, Fulton Bank acknowledged and agreed

that each Estate shall be entitled to receive from the Excluded Assets that are unencumbered assets

---

[6] The "Estate Share" is defined in the Stipulation and Order as meaning "seven and a half percent (7.5%) of an amount equal to the proceeds of the collection, sale, liquidation or other disposition of the Lender Collateral of an Estate, less the payments made pursuant to clauses (i) through (ii) in paragraph (a) above." See Stipulation and Order at 17, ¶ 2b.

of the applicable Debtor, first, (i) payment of the Trustee Commission and the Trustee Fees and Expenses related to the collection, sale, liquidation, or other disposition the Excluded Assets that are unencumbered assets of the applicable Debtor, which Trustee Commission and Trustee Fees and Expenses shall be paid from the proceeds of the collection, sale, liquidation or other disposition of the unencumbered Excluded Assets and other property and assets of the applicable Debtor to the extent such Trustee Commission and Trustee Fees and Expenses are related to the collection, sale, liquidation, or other disposition of the Excluded Assets that are unencumbered assets of the applicable Debtor; second, (ii) after and net of payments pursuant to the foregoing clause, payment and/or funding of unpaid Post-Petition Expenses set forth on the Budget related to the Debtor which owned such unencumbered Excluded Asset; and third, (iii) after and net of payments pursuant to the foregoing clauses, payment of distributions to creditors of the applicable Debtor in accordance with the priorities set forth in Bankruptcy Code (and with Lender's Deficiency Claim entitled to a pro rata share of any distribution to holders of allowed general unsecured claims, whether from the Estate Share, from unencumbered assets or otherwise).

### H.    Collection of Remaining Proceeds and Allocation and Payment of the Interim Distribution

58.    After subtracting the First Interim Distribution, as well as amounts payable previously authorized by various Orders of the Court, a total of $8,005,678.87 remains in the Debtors' bank accounts as of April 30, 2019 (the "Net Remaining Proceeds").

59.    Of the Net Remaining Proceeds, $1,651,606.64 are encumbered by Fulton Bank after subtracting the Trustee Commission and the Trustee Fees and Expenses in accordance with the Stipulation and Order (the "Net Remaining Fulton Encumbered Proceeds"), and $6,240,738.79 are unencumbered funds. The unencumbered funds have since been reduced as a result of Court-authorized payments to allowed administrative expense holders [D.I. 776]. The remaining

$113,333.44 are either secured by other third-party lenders, or earmarked for tax payments and third-party vendor commissions per Order of the Court.

60.    Consistent with the allocation methodology applied to the First Interim Distribution, the Trustee has apportioned percentages of the Net Remaining Fulton Encumbered Proceeds to each respective Debtor as follows:

- Debtor W&O - $738,860.38;
- Debtor Amerigreen Energy - $899,594.74; and
- Debtor Ranck Plumbing - $13,151.52.

61.    The Trustee believes that the mutually agreed upon methodology used to allocate the Net Remaining Fulton Encumbered Proceeds is supported by the facts of these cases and is fair and equitable.

62.    At this time, the Trustee requests authorization to issue an interim distribution of a portion of the Net Remaining Fulton Encumbered Proceeds to Fulton Bank in the amount of $1,000,000 broken down proportionally as follows:

- Debtor W&O - $447,358.57
- Debtor Amerigreen Energy - $544,678.57;
- Debtor Ranck Plumbing - $7,962.86.

(the "Interim Distribution").

63.    In order to effectuate the Interim Distribution, the Trustee, by and through this Motion, hereby requests the Court's authorization to transfer $433,713.09 from Debtor W&O's bank account to Debtor Amerigreen Energy's bank account, and $56,813.57 from Debtor AG Propane's bank account to Debtor Amerigreen Energy's bank account.

## I.    Reimbursement of payments made to Joel Hagaman as the Trustee's Consultant

61.    On July 20, 2018, the Trustee filed an *Application of the Chapter 7 Trustee for Entry of an Order Authorizing the Retention and Employment of Joel Hagaman as Consultant to*

Active\96059759.v3-6/18/19

*the Trustee, Pursuant to 11 U.S.C. §§ 327(a) and 328(a), Fed R. Bankr. P. 2014 and L.B.R. 2014-1, Nunc Pro Tunc to July 23, 2018* (the "Hagaman Employment Application") [D.I. 193].

62.    On August 6, 2018, the Court entered an Order granting the Hagaman Employment Application (the "Hagaman Order") [D.I. 298].

63.    Pursuant to the Hagaman Order, Joel Hagaman ("Mr. Hagaman") is entitled to compensation without the necessity of filing a fee application in accordance with 11 U.S.C. §§ 330 and 331. See Hagaman Order at ¶ 3.

64.    Since entry of the Hagaman Order, the Trustee has paid Mr. Hagaman compensation for services rendered to several of the Debtors' estates on behalf of the Trustee (the "Hagaman Payments").

65.    Out of an abundance of caution, the Hagaman Payments were paid solely from a bank account held by Debtor W&O.  However, Mr. Hagaman rendered services not only to Debtor W&O, but also to Debtor Ranck Plumbing, Debtor Amerigreen Energy, and Debtor AG Propane.

66.    In order to reimburse Debtor W&O for the Hagaman Payments remitted on behalf of Debtor Ranck Plumbing, Debtor Amerigreen Energy, and Debtor AG Propane—whose estates benefited from Mr. Hagaman's work—the Trustee, by and through this Motion, hereby requests the Court's authorization to transfer: (1) $7,389.00 from Debtor Ranck Plumbing's bank account to Debtor W&O's bank account; (2) $35,043.00 from Debtor Amerigreen Energy's bank account to Debtor W&O's bank account; and (3) $3,484.00 from Debtor AG Propane's account to Debtor W&O's bank account.

67.    Additionally, by and through this Motion, the Trustee hereby requests this Court's authorization to pay Mr. Hagaman from the applicable Debtor estate to which services are rendered

24

on a rolling basis without further Order of the Court and in accordance with the Hagaman Order, *nunc pro tunc* to April 30, 2019.

## RELIEF REQUESTED

71.    By and through this Motion, the Trustee seeks, pursuant to 11 U.S.C. § 105 and Fed. R. Bankr. P. 9019, entry of an order (i) authorizing the Trustee to make the Interim Distribution of $1,000,000.00 to Fulton Bank, in accordance with the terms of the Stipulation and Order and Amended Stipulation and Order; (ii) authorizing the Trustee to transfer $433,713.09 from Debtor W&O's bank account to Debtor Amerigreen Energy's bank account, and $56,813.57 from Debtor AG Propane's bank account to Debtor Amerigreen Energy's bank account, in order to effectuate the Interim Distribution; (ii) authoring the Trustee to transfer $7,389.00 from Debtor Ranck Plumbing's bank account to Debtor W&O's bank account, $35,043.00 from Debtor Amerigreen Energy's bank account to Debtor W&O's bank account, and $3,484.00 from Debtor AG Propane's account to Debtor W&O's bank account, each on account of the Hagaman Payments; and (iii) authorizing the Trustee to pay Mr. Hagaman from the applicable Debtor estate to which services are rendered on a rolling basis without further Order of the Court and in accordance with the Hagaman Order, *nunc pro tunc* to April 30, 2019.

## BASIS FOR RELIEF REQUESTED

72.    Section 105(a) authorizes the court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

73.    Fed. R. Bankr. P. 9019 provides that "[o]n motion by the [T]rustee and after notice and a hearing, the court may approve a compromise or settlement.  Notice shall be given to creditors, the United States trustee, the debtor . . . and to any other entity as the court may direct." Fed. R. Bankr. P. 9019(a); see also Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996)

25

74.     The Trustee is obligated to maximize the value of the estates and make her decisions in the best interest of all of the creditors of the estates.  See Martin, 91 F.3d at 394.  The Trustee believes, in her business judgment, that the proposed Interim Distribution are in accordance with the Stipulation and Order and are in the best interest of the Debtors' estates and all of their creditors.  Courts generally defer to a trustee's business judgment when there is a legitimate business justification for the trustee's decision.  See Martin, 91 F.3d at 395.

75.     The Trustee believes that it is appropriate to make the Interim Distribution to Fulton Bank at this point in time.  The Trustee has generated over $22 million of proceeds from the liquidation of assets of the Debtors' estates, all claim deadlines have passed, and the Trustee has a meaningful reserve of funds even after the Interim Distribution is paid.

76.     In the absence of the relief sought herein, Fulton Bank will continue to wait for the distribution until the Trustee files her Final Report and that Final Report is approved by this Court.

77.     In sum, given the uncertain timing as to the approval of the final distribution, the Trustee respectfully requests that this Court grant the relief requested in the Motion and permit the Trustee to issue the proposed Interim Distribution.

**NOTICE**

78.     Notice of this Motion has been provided to: (i) the Office of the United States Trustee for the Eastern District of Pennsylvania; (ii) the Debtors and their counsel; (iii) Fulton Bank and their counsel; (iv) other secured creditors and their counsel, if known; (v) all parties who have requested notice pursuant to Fed. R. Bankr. P. 2002; and (vi) in accordance with this Court's August 1, 2018 *Order Pursuant to 11 U.S.C. §§ 102 and 105(a) and Fed. R. Bankr. P. 2002(m) and 9007 Establishing Notice and Service Procedures* [D.I. 265].  The Trustee submits that such notice is proper and adequate and no further notice is necessary or required.

## CONCLUSION

WHEREFORE, the Trustee respectfully requests that the Court enter an Order: (i) approving the Motion; (ii) authorizing the Trustee to make the Interim Distribution of $1,000,000.00 to Fulton Bank, in accordance with the terms of the Stipulation and Order and Amended Stipulation and Order; (ii) authorizing the Trustee to transfer $433,713.09 from Debtor W&O's bank account to Debtor Amerigreen Energy's bank account, and $56,813.57 from Debtor AG Propane's bank account to Debtor Amerigreen Energy's bank account, in order to effectuate the Interim Distribution; (ii) authoring the Trustee to transfer $7,389.00 from Debtor Ranck Plumbing's bank account to Debtor W&O's bank account, $35,043.00 from Debtor Amerigreen Energy's bank account to Debtor W&O's bank account, and $3,484.00 from Debtor AG Propane's account to Debtor W&O's bank account, each on account of the Hagaman Payments; and (iii) authorizing the Trustee to pay Mr. Hagaman from the applicable Debtor estate to which services are rendered on a rolling basis without further Order of the Court and in accordance with the Hagaman Order, *nunc pro tunc* to April 30, 2019.; and (v) for other relief as is just and proper.

Respectfully submitted,

**FOX ROTHSCHILD LLP**

By: _/s/ Michael G. Menkowitz_
Michael G. Menkowitz, Esquire
Jesse M. Harris, Esquire
2000 Market Street, 20th Floor
Philadelphia, PA  19103-3222
Phone (215) 299-2000/Fax (215) 299-2150
mmenkowitz@foxrothschild.com
jmanfrey@foxrothschild.com
jesseharris@foxrothschild.com

Dated: June 18, 2019

Attorneys for Christine C. Shubert, Chapter 7 Trustee for the estates of  Worley & Obetz, Inc., *et al.*

Active\96059759.v3-6/18/19