# Exhibit "A"

# SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is made this June __, 2019, by and among Fulton Bank, N.A. ("Fulton Bank"), Julie H. Lyons ("Mrs. Lyons"), Jeffrey B. Lyons ("Mr. Lyons"), and Christine C. Shubert, solely in her capacity as the Chapter 7 Trustee (the "Trustee", and together with Fulton Bank, Mrs. Lyons, and Mr. Lyons, the "Parties") for the jointly administered estates of Worley & Obetz, Inc., *et al.* (the "Debtors")[1].

## RECITALS

1. **Bankruptcy Procedural Background**

   A.   On June 6, 2018 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Bankruptcy Court").

   B.   On the same day, the Office of the United States Trustee appointed the Trustee as Chapter 7 Trustee, which appointment remains in effect.

   C.   On June 19, 2018, the Bankruptcy Court entered an order directing the joint administration of the Debtors' bankruptcy cases for procedural purposes only pursuant to Fed. R. Bankr. P. 1015(b).

   D.   Prior to the Petition Date, Mr. Lyons was the Chief Executive Officer of Debtor Worley & Obetz, Inc. ("W&O") until May 15, 2018, when he was terminated for cause.

2. **Mr. Lyons and Mrs. Lyons Purchase of the Real Lancaster Property**

   E.   On or about October 12, 2005, Mr. Lyons and Mrs. Lyons purchased the real property located at 2601 Old Orchard Road, Lancaster, PA 17601 (the "Real Lancaster Property").

   F.   On or about October 27, 2010, Fulton Bank, as lender, made a loan to Mr. Lyons and Mrs. Lyons, as borrower, in the original principal amount of $670,000.00 (the "Fulton Bank Loan"), as evidenced by that certain Promissory Note, dated October 27, 2010, in the original principal amount of $670,000.00 (the "Promissory Note").

   G.   In order to secure Mr. Lyons's and Mrs. Lyons's obligations under the Promissory Note, on October 27, 2010, Mr. Lyons and Mrs. Lyons made, executed, and delivered to Fulton Bank a Mortgage (the "Mortgage") encumbering the Real Lancaster Property and as more particularly described in the Mortgage.

---

[1] The Debtors in these cases, along with the last four digits of their federal tax identification numbers, are (i) Worley & Obetz, Inc. (6576) (Case No. 18-13774-REF); (ii) Americomfort, Inc. (7605) (Case No. 18-13775-REF); (iii) RPHAC, Inc. (9625) (Case No. 18-13776-REF); (iv) Amerigreen Energy, Inc. (6284) (Case No. 18-13777-REF); (v) Advance Air, Inc. (8111) (Case No. 18-13778-REF); (vi) Amerigreen Energy Brokers, LLC (2358) (Case No. 18-13779-REF); (vii) Amerigreen Electricity, LLC (8977) (Case No. 18-13780-REF); (viii) Amerigreen Hedging Services, LLC (8549) (Case No. 18-13781-REF); (ix) Amerigreen Lubricants, LLC (7489) (Case No. 18-13782-REF); (x) Amerigreen Natural Gas, LLC (3222) (Case No. 18-13783-REF); and (xi) Amerigreen Propane, LLC (Case No. 18-13784-REF).

1

H.    On March 20, 2013, Mr. Lyons directed W&O to issue a check in the amount of $200,000.00 to Mr. Lyons, which funds were used to pay down the amount due and owing under the Promissory Note and Mortgage (the "W&O Payment").

I.    Mr. Lyons and Mrs. Lyons have listed the Real Lancaster Property for sale for the purchase price of $969,900.00 (the "Asking Price").

J.    As of the execution date of this Agreement, the total amount due and owing under the Promissory Note and Mortgage is approximately $70,000.00 (the "Promissory Note Indebtedness").

3.    **Mr. Lyons and Mrs. Lyons Interest in Fenwick Property**

K.    On or about May 20, 2009, Mr. and Mrs. Lyons, as tenants by the entirety, purchased an undivided 50% interest in real property located at 40127 Fenwick Avenue, Unit 3, Fenwick Island, Delaware (the "Fenwick Property").

4.    **Mr. Lyons and Mrs. Lyons Establishment of CD and Account**

L.    On or about January 7, 2009, Mr. Lyons and Mrs. Lyons established a certificate of deposit (the "CD") and a related, jointly-held account bearing account number XXX-XXX9360 at Fulton Bank (the "Account").

M.    On May 21, 2018, Fulton Bank administratively froze the Account.

N.    By letter dated July 13, 2018, the Trustee requested that Fulton Bank administratively freeze the CD.

O.    As of March 14, 2019, the positive balance of the CD on deposit in the Account (the "CD Balance") was $155,201.46.

5.    **Commencement of the Interpleader Action**

P.    On July 17, 2018, Fulton Bank commenced an interpleader action in the Bankruptcy Court against the Trustee, Mr. Lyons, and Mrs. Lyons as a result of competing and adverse claims to the CD Balance, which case is captioned as Fulton Bank, N.A. v. Christine C. Shubert, Case No. 18-00163 (the "Interpleader Action").

6.    **Commencement of the Adversary Action**

Q.    On October 15, 2018, the Trustee commenced an adversary action against Mr. Lyons and Mrs. Lyons, among other defendants, in the Bankruptcy Court, which case is captioned as Christine C. Shubert v. Robert Seth Obetz, et al., Case No. 18-00235 (the "Adversary Action").

2

97033489

R.     The Parties have agreed to resolve the dispute regarding payment of the CD Balance, the proceeds from the sale of the Real Lancaster Property, and Mr. Lyons's and Mrs. Lyons's interest in the Fenwick Property on the terms set forth herein.

**NOW, THEREFORE**, for good and valuable consideration, including the mutual covenants set forth below, the receipt and sufficiency of which the Parties hereby acknowledge, and intending to be legally bound, the Parties hereby agree as follows:

### AGREEMENT

**NOW THEREFORE, IT IS HEREBY STIPULATED** and agreed to by, between and among the Parties as follows:

1.     **Incorporation.** The Recitals set forth above are hereby incorporated in full and made a part of this Agreement.

2.     **Effective Date.** As soon as practicable after the execution hereof by the Parties, the Trustee shall file with the Bankruptcy Court a Motion for entry of an Order approving this Agreement between the Parties pursuant to Fed. R. Bankr. P. 9019 and Fed. R. Civ. P. 41. Except for as expressly stated herein regarding the effective date of the release provided in Paragraph 10 below, the effective date (the "Effective Date") under this Agreement shall be the first business day after the Bankruptcy Court enters an Order approving this Agreement. If this Agreement is not approved by the Bankruptcy Court, this Agreement shall be null and void and made without prejudice to either party.

3.     **Sale of Real Lancaster Property.**

  a.     Mr. Lyons and Mrs. Lyons shall act in good faith in attempting to sell the Real Lancaster Property. Mr. Lyons and Mrs. Lyons shall enter into an agreement of sale for the sale of the Real Lancaster Property at a purchase price acceptable to the Trustee (the "Gross Real Lancaster Property Proceeds").

  b.     There shall be subtracted from the Gross Real Lancaster Property Proceeds any and all closing costs, including, but not limited to, (i) any commission payable to the brokers in connection with the sale of the Real Lancaster Property (the "Brokers' Commissions"), (ii) the Trustee's commission pursuant to 11 U.S.C. § 326, which shall be calculated based on the amount of the Gross Real Lancaster Property Proceeds, less the amount of Mrs. Lyons's Share (the "Trustee's Commission"), and (iii) an amount sufficient to payoff and satisfy the Promissory Note Indebtedness due to Fulton Bank under the Promissory Note (the "Fulton Bank Promissory Note Payoff" and collectively with the Brokers' Commissions, the Trustee's Commission, and any other closing costs, the "Closing Costs"). The remaining amount of the proceeds from the Gross Real Lancaster Property Proceeds after and net of payment of the Closing Costs shall be defined herein as the "Adjusted Real Lancaster Property Proceeds."

  c.     There shall be subtracted from the Adjusted Real Lancaster Property Proceeds $200,000.00, which will be paid to the Trustee and W&O's estate as repayment for the

3

97033489

W&O Payment (the "W&O Repayment"). The remaining amount of the Adjusted Real Lancaster Property Proceeds after and net of payment of the W&O Repayment shall be defined herein as the "Allocable Real Lancaster Property Proceeds".

   d. The Debtors' estates and the Trustee shall be entitled to receive fifty-percent (50%) of the Allocable Real Lancaster Property Proceeds (the "Estates' Share"). The Estates' Share shall be held in escrow by the Trustee pending a full and final resolution of the Adversary Action. Upon the filing of a Stipulation of Dismissal signed by all parties pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), or the entry of a final, non-appealable Judgment or Order fully resolving all claims in the Adversary Action, including, but not limited to, the claims asserted against and by the Remaining Defendants, the Estates' Share shall be released from escrow to the Trustee.

   e. Mrs. Lyons shall be entitled to receive fifty-percent (50%) of the Allocable Real Lancaster Property Proceeds ("Mrs. Lyons's Share").

   f. On or before Closing on the sale of the Real Lancaster Property, the Trustee shall take all steps necessary to satisfy the lis pendens presently filed by her in the Lancaster County Court Common Pleas to 18-07553 against the Real Lancaster Property and shall also mark the Lancaster County Court Docket in that case, settled, discontinued, and ended with costs paid as to Mr. Lyons and Mrs. Lyons.

  4. **Turnover of Interest in Fenwick Property.** Mr. Lyons and Mrs. Lyons shall turnover to the Trustee their undivided 50% interest as tenants by the entirety in the Fenwick Property within (10) business days of the Effective Date. Mr. Lyons and Mrs. Lyons shall each take all steps necessary to effectuate a valid transfer of their undivided 50% interest as tenants by the entirety in the Fenwick Property, including, but not limited to, execution of a quit claim deed substantially in the form attached hereto as **Exhibit A**. Additionally, Mr. Lyons and Mrs. Lyons agree to provide any other documentation requested by the Trustee that is necessary to effectuate a valid transfer of Mr. Lyons's and Mrs. Lyons's undivided 50% interest as tenants by the entirety in the Fenwick Property. Any proceeds from the Trustee's sale of the Fenwick Property shall be held in escrow by the Title Company pending a full and final resolution of the Adversary Action. Upon the filing of a Stipulation of Dismissal signed by all parties pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), or the entry of a final, non-appealable Judgment or Order fully resolving all claims in the Adversary Action, including, but not limited to, the claims asserted against and by the Remaining Defendants, the proceeds of the sale of the Fenwick Property shall be released from escrow to the Trustee.

  5. **CD Payments.** Within five (5) business days after the Effective Date, Fulton Bank shall (1) pay to the Trustee the total sum of 50% of the CD Balance as of the Effective Date, which payment will be held in escrow by the Trustee pending a full and final resolution of the Adversary Action (the "Estates' CD Settlement Sum"), and (2) pay to Mrs. Lyons the total sum of 50% of the CD Balance as of the Effective Date ("Mrs. Lyons's CD Settlement Sum"). Payment of the CD Settlement Sums shall be made in one installment by check payable to the Trustee, and one installment by check payable to Mrs. Lyons, both delivered by federal express or hand delivery, or by wire transfer pursuant to instructions provided by the Trustee and Mrs.

4

97033489

Lyons. Upon the filing of a Stipulation of Dismissal signed by all parties pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), or the entry of a final, non-appealable Judgment or Order fully resolving all claims in the Adversary Action, including, but not limited to, the claims asserted against and by the Remaining Defendants, the Estates' CD Settlement Sum shall be released from escrow to the Trustee.

6. **Property of Debtors.** Mrs. Lyons covenants and represents that, to the best of her knowledge, and without independent investigation, Mrs. Lyons received no direct or indirect payments or transfers of property from the Debtors within four (4) years before the Petition Date.

7. **Release of the Trustee by Mrs. Lyons.** As of the Effective Date, and in consideration of the provisions set forth in this Agreement, Mrs. Lyons and her agents, heirs, successors, assigns, personal representatives, attorneys, and anyone claiming through or on behalf of Mrs. Lyons, hereby remise, release and forever discharge the Trustee and the Debtors' estates, from any and all claims, actions, liabilities, debts and causes of action, whatsoever, whether in law or in equity, whether known or unknown, which Mrs. Lyons has, ever had, might have had or might have in the future, arising out of or in connection with, in whole or in part, and relating in any way to the allegations set forth in the Interpleader Action, the Adversary Action, and all other disputes arising out of or related to the Debtors' bankruptcy cases, from the beginning of time to the end of time.

8. **Release of Mrs. Lyons by the Trustee.** As of the Effective Date, and in consideration of the provisions set forth in this Agreement, the Trustee, in her capacity as the Chapter 7 Trustee for the bankruptcy estates of the Debtors, and the Debtors' estates, hereby knowingly and voluntarily release and forever discharge Mrs. Lyons and her agents, heirs, successors, executors, assigns, attorneys, accountants, and personal representatives ("the Mrs. Lyons Released Parties"), **only**, from any and all suits, causes of action, complaints, charges, obligations, demands, or claims of any kind, whether in law or in equity, direct or indirect, known or unknown, which the Trustee and/or Debtors' estates ever had or now have against the Mrs. Lyons Released Parties, arising out of or in connection with, in whole or in part, and relating in any way to the allegations set forth in the Interpleader Action, the Adversary Action, and all other disputes arising out of or relating to any matter concerning the administration of the Debtors' bankruptcy estates under any state or federal law, including, but not limited to, the Pennsylvania Uniform Voidable Transactions Act, or any other Pennsylvania statute, and the United States Bankruptcy Code. This release includes, but is not limited to, any and all claims that the Trustee and/or the Debtors' estates ever had or now have against the Mrs. Lyons Released Parties, **only**, for unjust enrichment, conversion, avoidance and recovery of fraudulent transfers pursuant to 12 Pa. C.S. § 5101, et seq., and 11 U.S.C. § 544 and turnover pursuant to 11 U.S.C. § 542, any and all claims for compensatory or punitive damages, and any and all claims for attorneys' fees and costs. It is expressly understood and agreed that by signing this Agreement, the Trustee does not relinquish and expressly reserves her right to pursue any and all claims, causes of actions, suits, and demands whatsoever, whether known or unknown, including, but not limited to, the claims asserted in the Adversary Action, against any parties, persons, or entities, other than the Mrs. Lyons Released Parties, including, but not limited to, Mr. Lyons, subject to the terms and provisions of the Limited Release in Paragraph 10, Robert Seth Obetz, Robert W. Obetz, Jr., Judith A. Avilez, Karen L. Connelly, Marjorie S. Obetz, Melissa Obetz, Molly S. Obetz, Samuel

5

97033489

J. Obetz, Howard W. Cramer, Jr., Kathleen A. Cramer, Michele K. Klusewitz, a/k/a Michele Kelly, 149 Doe Run Road, LP, 149 Doe Run Road, GP, LLC, 202 Greenfield, LP, 202 Greenfield General, LLC, 535 Stiegel Valley Road, LLC, Doe Run Road, LLC, OL Partners, LLC, G-Force Sportfishing, Inc., JW Bishop Properties, LLC, Lyons & Obetz, and JSB Retention, LLC (the "Remaining Defendants"), including, but not limited to, the Trustee's right to claim that the Remaining Defendants, and not Mrs. Lyons, are liable to the Trustee for any and/or all injuries, losses and damages. Mrs. Lyons and the Trustee expressly agree and acknowledge that the Trustee reserves all rights, waiving none, regarding the claims asserted against the Remaining Defendants in the Adversary Action, subject to the terms and provisions of the Limited Release of Mr. Lyons, as set forth in Paragraph 10.

9. **Limited Release of the Trustee by Mr. Lyons.** In consideration of the provisions set forth in this Agreement, Mr. Lyons and his agents, heirs, successors, assigns, personal representatives, attorneys, and anyone claiming through or on behalf of Mr. Lyons, hereby remise, release and forever discharge the Trustee and the Debtors' estates, from any and all claims, actions, liabilities, debts and causes of action, whatsoever, whether in law or in equity, whether known or unknown, which Mr. Lyons has, ever had, might have had or might have in the future, relating to the Real Lancaster Property, the Fenwick Property, the CD, and/or the Account. The release provided in this paragraph will be effective upon the filing of a Stipulation of Dismissal signed by all parties pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), or the entry of a final, non-appealable Judgment or Order fully resolving all claims in the Adversary Action, including, but not limited to, the claims asserted against and by the Remaining Defendants.

10. **Limited Release of Mr. Lyons by the Trustee.** In consideration of the provisions set forth in this Agreement, and upon the filing of a Stipulation of Dismissal signed by all parties pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), or the entry of final, non-appealable Judgment or Order fully resolving all claims in the Adversary Action, including, but not limited to, the claims asserted against and by the Remaining Defendants, the Trustee, in her capacity as the Chapter 7 Trustee for the bankruptcy estates of the Debtors, will knowingly and voluntarily release and forever discharge Mr. Lyons, **only**, from the claims asserted against Mr. Lyons as they relate to the Real Lancaster Property, the Fenwick Property, CD, and/or the Account, **only**, including any claims arising out of or in connection with, in whole or in part, and relating in any way to the allegations set forth in the Interpleader Action. This release shall in no way be interpreted as a release of, or an agreement to settle, any of the claims, counts, or causes of action asserted in the Amended Complaint filed by the Trustee in the Adversary Action (the "Amended Complaint"), against Mr. Lyons or any of the Remaining Defendants, except for the limited purpose of resolving the Parties' disputes over the ownership and rights to the Real Lancaster Property, the Lyons' interests in the Fenwick Property, the CD, and the Account. It is expressly understood and agreed that the Trustee will pursue all claims, counts, and causes of action asserted in the Amended Complaint against Mr. Lyons and the Remaining Defendants. It is expressly understood and agreed that by signing this Agreement, the Trustee does not relinquish and expressly reserves her right to pursue and recover any and all other property (real or otherwise) or assets belonging to, purportedly belonging to, or in the possession of, Mr. Lyons, and/or his agents, heirs, successors, assigns, attorneys, accounts, or personal representatives. It is expressly understood and agreed that by signing this Agreement, the

6

97033489

Trustee does not relinquish and expressly reserves her right to pursue any and all claims, causes of actions, suits, and demands whatsoever, whether known or unknown, relating to or arising out of Mr. Lyons's role as an officer, director, employee, and/or insider of the Debtors, against any parties, persons, or entities (other than Mrs. Lyons as set forth in Paragraph 8 above), including, but not limited to, the Trustee's right to claim that the Remaining Defendants, and not Mr. Lyons, are liable to the Trustee for any and/or all injuries, losses and damages.  Nothing contained in this Agreement shall be construed to release, alter, or affect any other claims or causes of action that the Trustee may have against Mr. Lyons relating to the administration of the Debtors' bankruptcy estates.  Nothing contained in this Agreement shall be construed to release, alter, or affect any claims or causes of action that the Trustee has or may have against Mr. Lyons's agents, heirs, successors, assigns, attorneys, accountants, or personal representatives.

11. **Release of Fulton Bank by Mr. Lyons.** As of the Effective Date, and in consideration of the provisions set forth in this Agreement, Mr. Lyons and his agents, heirs, successors, assigns, personal representatives, attorneys, and anyone claiming through or on behalf of Mr. Lyons, hereby remise, release and forever discharge the Fulton Bank Released Parties, from any and all suits, causes of action, complaints, charges, obligations, demands, or claims of any kind, whether in law or in equity, direct or indirect, known or unknown, which Mr. Lyons ever had or now has against the Fulton Bank Released Parties relating to the CD and Account **only**, including all claims with respect thereto arising out of or in connection with, in whole or in part, and relating in any way to the allegations set forth in, the Interpleader Action.

12. **Release of Mr. Lyons by Fulton Bank.** As of the Effective Date and in consideration of the provisions set forth in this Agreement, Fulton Bank hereby knowingly and voluntarily releases and forever discharges Mr. Lyons from any and all suits, causes of action, complaints, charges, obligations, demands, or claims of any kind, whether in law or in equity, direct or indirect, known or unknown, which Fulton Bank ever had or now has against Mr. Lyons relating to the CD and Account, **only**, including all claims with respect thereto arising out of or in connection with, in whole or in part, and relating in any way to the allegations set forth in, the Interpleader Action.  **For the avoidance of doubt, the releases set forth in Paragraphs 11 and 12 are intended only to resolve Mr. Lyons's and Fulton Bank's respective claims, rights, and interests in and to the CD and the Acccount.**

13. **No Release as to Remaining Defendants; Survival of Claims.** This Agreement shall confer no rights whatsoever upon any third party or entity, unless expressly set forth herein. Except as set forth in Paragraph 10, the Trustee's claims against the Remaining Defendants expressly survive this Agreement and the Trustee does not provide a release of any kind with respect to the Remaining Defendants and/or any other potentially responsible Party relating to the claims that have been asserted or could be asserted in the Adversary Action, and/or any other claims relating to the administration of the Debtors' bankruptcy estates. The Trustee specifically reserves all equitable and legal rights and may pursue any and all claims the Trustee had, has, or may have against the Remaining Defendants, and their respective directors, officers, shareholders, principals, agents, heirs, successors, assigns, personal representatives, and/or attorneys, including, without limitation all claims, matters, and disputes involved in the Adversary Action, except for those claims directly related and limited to the Real Lancaster Property, the Lyons' interests in the Fenwick Property, the CD, and/or the Account.  The Trustee

specifically reserves all equitable and legal rights and may pursue any and all claims the Trustee had, has, or may have against Robert Seth Obetz and Melissa Obetz relating to their purported interests in the Fenwick Property.

14. **No Admission and Protected Communications Under FRE 408.** This Agreement is a compromise and settlement of disputed claims. The settlement memorialized in this Agreement and all negotiations, statements and proceedings in connection therewith shall not be offered as or in any way construed as or deemed to be evidence of an admission or concession on the part of any party to this Agreement of any liability or wrongdoing on their part, which liability or wrongdoing is hereby expressly denied and disclaimed, and shall not be used against any party to this Agreement in any pending or future action or proceeding except to enforce the terms hereof.

15. **Entire Agreement.** This Agreement sets forth the entire agreement and understanding of the Parties hereto with respect to the subject matter herein and supersedes and merges all prior oral and written agreements, discussions and understandings between the Parties with respect thereto, and none of the Parties shall be bound by any conditions, inducements or representations other than as expressly provided for herein.

16. **Amendment.** No term of this Agreement may be waived, modified or amended except in writing signed by the Party against whom enforcement of the waiver, modification or amendment is sought.

17. **Authority to Execute Agreement.** Each Party covenants and represents that it is fully authorized to enter into this Agreement and to carry out the obligations provided for in this Agreement. Where a person has executed this Agreement on behalf of a Party, that person covenants, warrants, and represents that he or she is authorized to do so by that Party.

18. **Governing Law.** This Agreement shall be governed by Pennsylvania law, without regard to principles of conflicts of laws. Each of the Parties shall pay its own respective costs and attorneys' fees incurred with respect to all of the issues or matters set forth or referenced in this Agreement.

19. **Severability.** In the event that any provision of this Agreement should be held to be void, voidable, or unenforceable, the remaining portions shall remain in full force and effect.

20. **Counterparts.** This Agreement may be executed in one or more counterparts, including by facsimile, each of which shall be deemed an original, but all of which together constitute one and the same instrument. Facsimile and electronic copies of executed copies of this Agreement shall be deemed the equivalent of an original copy of this Agreement for all purposes.

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed the day and year first written above.

By: _____
Michael G. Menkowitz, Esquire
2000 Market Street, 20th Floor
Philadelphia, PA 19103-3222
215-299-2000; 215-299-2150 (Fax)
mmenkowitz@foxrothschild.com
*Attorneys for Christine C. Shubert, Chapter 7 Trustee for the Estates of Worley & Obetz, Inc., et al.*

REED SMITH LLP

By: _____
Brian Martin Schenker, Esquire
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103
215-241-7966
bschenker@reedsmith.com

*Attorneys for Fulton Bank, N.A.*

By: _____
John A. DiGiamberardino, Esquire
845 North Park Road, Suite 101
Wyomissing, PA 19610
610-372-9900; 610-372-5469 (Fax)
jad@cdllawoffice.com

*Attorneys for Julie H. Lyons*

By: _____
Jeffrey B. Lyons

By: _____
Julie H. Lyons

9

97033489

By: _____
Michael G. Menkowitz, Esquire
2000 Market Street, 20th Floor
Philadelphia, PA 19103-3222
215-299-2000; 215-299-2150 (Fax)
mmenkowitz@foxrothschild.com
*Attorneys for Christine C. Shubert, Chapter 7 Trustee for the Estates of Worley & Obetz, Inc., et al.*

REED SMITH LLP

By: _____
Brian Martin Schenker, Esquire
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103
215-241-7966
bschenker@reedsmith.com

*Attorneys for Fulton Bank, N.A.*

By: _____
John A. DiGiamberardino, Esquire
845 North Park Road, Suite 101
Wyomissing, PA 19610
610-372-9900; 610-372-5469 (Fax)
jad@cdllawoffice.com

*Attorneys for Julie H. Lyons*

By: _____
Jeffrey B. Lyons

By: _____
Julie H. Lyons

97033489

9