**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| Worley & Obetz, Inc., *et al.*, | : | Bankruptcy No. 18-13774-MDC |
| Debtors. | : | (Jointly Administered) |

_____

# MEMORANDUM

BY: MAGDELINE D. COLEMAN, CHIEF U.S. BANKRUPTCY JUDGE

## I.    INTRODUCTION

Before the Court for disposition are separate objections (together, the "Objections")[1]

brought by Christine C. Shubert, as Chapter 7 Trustee of the above-captioned bankruptcy estates

(the "Trustee"), to proofs of claim (together, the "Claims")[2] filed by Sandra Rapp ("Ms. Rapp")

and Sheila Pringle ("Ms. Pringle," and together with Ms. Rapp, the "Claimants").  The Trustee

objects to the allowance of the Claims as administrative expenses under §503(b)(1) of the

Bankruptcy Code, 11 U.S.C. §§101, *et seq.*, or as priority claims under §507(a)(7) of the

Bankruptcy Code.

For the reasons set forth below, the Court will sustain the Trustee's Objections in part and

overrule them in part.  The Court has already ruled that the Claims are not entitled to allowance

as administrative expenses under §503(b)(1) of the Bankruptcy Code.  They are, however,

entitled to priority status under §507(a)(7) of the Bankruptcy Code because they constitute

unsecured claims "arising from the deposit, before the commencement of the case, of money in

---

[1] Bankr. Docket Nos. 787, 789.  Because both Objections raise the same issue, the Court will address the Objections in one Memorandum decision.

[2] Proofs of Claim Nos. 251, 256.

connection with the purchase, lease, or rental of property, or the purchase of services, for the

personal, family, or household use of such individuals, that were not delivered or provided."

11 U.S.C. §507(a)(7).

## II.    PROCEDURAL AND FACTUAL BACKGROUND

On June 6, 2018 (the "Petition Date"), Worley & Obetz, Inc. ("Worley & Obetz") and ten

related companies (together, the "Debtors") each filed voluntary chapter 7 bankruptcy petitions.

On the same day, the Trustee was appointed in each of the Debtors' bankruptcy cases.  On June

19, 2018, the Court entered an Order directing that the Debtors' cases be jointly administered for

procedural purposes only.

Prior to the Petition Date, Worley & Obetz provided various energy products to

residential customers, including heating oil and propane.  The residential customers had the

option of paying for the fuel when it was delivered or participating in a budget program.  Under

the budget program, a customer would pay a fixed amount each month during the heating season.

Once received, the budget payments were credited by Worley & Obetz towards the customer's

total fuel balance.  Worley & Obetz would deliver fuel to these customers once their fuel

inventory fell below a certain level, which was tracked using software that estimated the

customer's inventory based on weather conditions and usage history.  As a result of Worley &

Obetz's bankruptcy filing, some of the residential customers participating in the budget program

did not receive all of their fuel deliveries despite having made the required budget payments.

These customers had positive balances in their accounts with Worley & Obetz as of the Petition

Date and were therefore creditors of Worley & Obetz.

On March 8, 2019, Ms. Rapp, a participant in Worley & Obetz's budget program, filed a

*pro se* proof of claim (the "Rapp Claim") against Worley & Obetz in the amount of $569.91,

which Ms. Rapp asserted was an administrative expense.[3]  The amount of the Rapp Claim

represents the amount remaining in Ms. Rapp's budget plan account with Worley & Obetz on the

Petition Date.

On March 18, 2019, Ms. Pringle filed a *pro se* proof of claim (the "Pringle Claim")

against Worley & Obetz in the amount of $348.36, which Ms. Pringle asserted was an

administrative expense.[4]  The amount of the Pringle Claim represents the amount remaining in

Ms. Pringle's budget plan account with Worley & Obetz on the Petition Date.

On June 13, 2019, the Trustee filed the Objections to the Claims.  The Trustee did not

object to the amounts the Claimants assert are owed to them.  Rather, the Trustee only objected

to the allowance of the Claims as administrative expenses under §503(b)(1) and requested that

the Claims be reclassified as general unsecured claims.  Neither of the Claimants filed a response

to the Objections.

On July 17, 2019, the Court held a hearing on the Objections (the "Hearing").  Neither

Ms. Rapp nor Ms. Pringle appeared.  At the Hearing, the Court found that the Claims do not

constitute administrative expenses under §503(b)(1) of the Bankruptcy Code.[5]  The Court

questioned, however, whether the claims were "deposits" under §507(a)(7) of the Bankruptcy

Code entitled to priority status.[6]  The Trustee argued that priority status should not be afforded to

the Claims because they do not constitute "deposits" as contemplated by §507(a)(7) and the

---

[3] The Rapp Claim does not indicate the basis for Ms. Rapp's assertion of an administrative expense claim or the sub-section of §503(b) under which she sought to have the Rapp Claim treated as an administrative expense.

[4] Similar to the Rapp Claim, the Pringle Claim does not indicate the basis for Ms. Pringle's assertion of an administrative expense claim or the sub-section of §503(b) under which she sought to have the Pringle Claim treated as an administrative expense.

[5] July 17, 2019 Hearing Recording, at 2:12.

[6] July 17, 2019 Hearing Recording, at 2:09, 2:12 to 2:13.

caselaw interpreting it.[7]  The Court directed the Trustee to file a letter brief in support of her

position,[8] which the Trustee did on July 30, 2019 (the "Letter Brief").[9]

## III.    DISCUSSION

        Having already determined at the Hearing that the Claims do not constitute administrative

expenses pursuant to §503(b) of the Bankruptcy Code, the Court must determine whether they

are nonetheless entitled to priority status pursuant to §507(a)(7).  That section provides, in

relevant part, that:

> (a) The following expenses and claims have priority in the following
> order: . . . (7) Seventh, allowed unsecured claims of individuals, to the
> extent of $2,850 for each individual, arising from the deposit, before the
> commencement of the case, of money in connection with the purchase,
> lease or rental of property, or the purchase of services, for the personal,
> family, or household use of such individuals, that were not delivered or
> provided.[10]

11 U.S.C. §507(a)(7).  The crux of the issue here is whether the budget program payments the

Claimants made constitute "deposits" for purposes of §507(a)(7).  The Bankruptcy Code does

not define the term "deposit," and bankruptcy courts have looked to various definitions of the

term to interpret its meaning.  *See, e.g., In re City Sports, Inc.*, 554 B.R. 329, 334 (Bankr. D. Del.

2016) (collecting definitions courts have used).

        The Trustee relies heavily on, and asks this Court to follow, the interpretation the *City

Sports* court employed in finding that gift cards the *City Sports* debtor issued did not qualify as

deposits entitled to priority status.  Letter Brief at pgs. 3-5.  The *City Sports* court looked to the

---

[7] July 17, 2019 Hearing Recording, at 2:09 to 2:12.

[8] July 17, 2019 Hearing Recording, at 2:18 to 2:19.

[9] Bankr. Docket No. 877.

[10] In its present form section 507(a)(7) allows priority claims up to $3,025.  That increase, however, took effect on April 1, 2019, and pursuant to §104(c) the increase does not apply to cases commenced before that date.  As noted above, the Debtors' cases were filed on June 6, 2018.

various definitions other bankruptcy courts had cited in the context of resolving claims under

§507(a)(7), and found that all those definitions agreed that "'the term 'deposit' connotes a

temporal relationship between the time consideration is given and the time the right to use or

possess is vested in the individual giving the consideration.'" *Id.* at 334-35 (reviewing various

definitions and quoting *In re Nittany Enterprises, Inc.*, 502 B.R. 447, 455 (Bankr. W.D. Va.

2012)). Viewing the gift cards at issue under the lens of this temporal relationship requirement

the court in *City Sports* ruled that gift cards with no expiration were not "deposits" under

§507(a)(7) because "[t]he purchase of a gift card is a short transaction, without a temporal

relationship: the consumer makes payment and simultaneously receives the gift card. Whether

the consumer uses the gift card in a future transaction or gives the card to another party and that

party uses it in a future transaction, is beyond the scope of the inquiry." *Id.* at 335-36.

The Trustee also cites *In re Utility Craft, Inc.*, 2008 WL 5429667 (Bankr. M.D.N.C. Dec.

29, 2008), in support of her argument that a temporal relationship must exist to satisfy the

deposit requirement. Letter Brief at pg. 4. There the court found that store credit issued to a

consumer for a returned defective product does not qualify as a deposit under §507(a)(7), even

though the consumer initially provided a deposit when purchasing the defective product, because

"the transaction is complete as it relates to section 507(a)(7) [once the store credit was issued.]."

*Id.* at *4.

The Trustee argues that the analysis employed by the *City Sports* and *Utility Craft* courts

applies to the payments the Claimants made to Worley & Obetz. Analogizing the budget plan

payments to the gift cards at issue in *City Sports* and the store credit at issue in *Utility Craft*,

the Trustee argues that the payments lack a temporal relationship to the time the Claimants became

entitled to use the fuel. Letter Brief at pgs. 4-5. According to the Trustee, the transaction was

5

completed once the Claimants received a credit for fuel deliveries, at which point Worley &

Obetz simply delayed delivery until the Claimants needed the fuel purchased. *Id.* at 5. As the

Trustee views it, "the fact that fuel could ultimately be delivered at some point later in time does

not change the result because, as articulated in *City Sports*, such future transactions are not part

of the inquiry." *Id.* In light of what she asserts is a lack of a temporal relationship between the

budget plan payments and the delivery of fuel to the Claimants, as well as the bankruptcy goal of

equal distribution of estate assets among creditors and construing the priority statutes narrowly,

the Trustee argues a finding that the budget plan payments do not constitute "deposits" under

§507(a)(7) is mandated. *Id.*

   In contrast to the narrow approach advanced by the Trustee is the broad approach adopted

by the court in *In re WW Warehouse, Inc.*, 313 B.R. 588 (Bankr. D. Del. 2004), a decision

acknowledged but ultimately deemed unpersuasive by the *City Sports* court. The *WW*

*Warehouse* court concluded that gift certificates the debtor issued were "deposits" as

contemplated by §507(a)(7), rejecting the debtor's argument that they instead represented paid-

in-full transactions. *Id.* at 590-91. The court was persuaded by the legislative history of the

statute, which "reveals that it was passed to give priority to consumers who found themselves in

the same straits as gift certificate purchasers." *Id.* at 594. The court reasoned that consumers do

not purchase gift certificates as the ultimate purchase, but rather expect the merchant to apply

some or all of the face value of the gift certificate toward the ultimate purchase. *Id.* at 595. The

court concluded that a gift certificate is merely the document that entitles the holder to receive

something of value. *Id.* The court in *City Sports* disagreed with this analysis, finding that it

"wrongly focused on 'the ultimate purchase,' an amorphous concept with potentially unlimited

temporal extension. The court should have focused on the limits of the *transaction*."  *City Sports*,

554 B.R. at 335.

Initially this Court observes that the budget plan payments the Claimants made are

dissimilar to the gift cards in *City Sports* and the gift certificates in *WW Warehouse*.  Those

"transactions" involved the payment of consideration by the consumer in exchange for the

merchant's promise to provide goods to a person who presented the gift card or gift certificate at

a later date.  The nature of those transactions may or may not qualify as a deposit, but they do not

resemble the budget plan payments at issue here.  The budget plan payments here were made by

the Claimants and were to be applied against fuel service used only by the Claimants.  They were

personal to the Claimants and were to be credited to the Claimants, and therefore lacked the

"potentially unlimited" nature of use that gift cards or gift certificates might.

Putting aside that fundamental difference, the Court concludes that the budget plan

payments qualify as deposits whether employing the narrow approach of the *City Sports* and

*Utility Craft* courts or the more expansive approach of the *WW Warehouse* court.  First, under the

narrow approach requiring a "temporal relationship" between the time consideration is given and

the time the right to use or possess is vested, the budget plan payments satisfy this test.  The

Claimants made the budget plan payments in connection with the delivery of fuel for the

upcoming heating season.  The payments made were consideration from the Claimants in

exchange for Worley & Obetz's promise to deliver fuel as the heating season progressed.  The

balance of the payments would be made over time as the heating season continued, and Worley

& Obetz would continue to deliver fuel to the Claimants and set off the value of the fuel against

the payments that had been or would be made over the course of the heating season.  This is very

different than the gift card transactions the *City Sports* court addressed, which the court found to

be "a short transaction without a temporal relationship: the consumer makes payment and

simultaneously received the gift card." *City Sports*, 554 B.R. at 335.  The budget plan payments

entailed no such immediate and contemporaneous "completed" transaction; completion

depended on Worley & Obetz's ultimate delivery of the fuel over the course of the heating

season.  The Court therefore disagrees with the Trustee's argument that "[t]he transaction for the

purchase of the fuel was complete upon payment, at which point the Debtor, in effect, simply

delayed delivery until the customer needed the fuel."  Rather, the nature of the budget plan

payments fall squarely within at least two of the definitions of "deposit" noted by the *City Sports*

court.  *Id.* at 334 (*citing In re DeAngelis Tangibles, Inc.*, 238 B.R. 96, 98 (Bankr. M.D. Pa. 1999)

("money or other property transferred by an offeror to the account of the offeree in conjunction

with an offer") and *WW Warehouse*, 313 B.R. at 592 ("The act of giving money or other property

to another who promises to preserve it or to use it and return it in kind.").

The Court finds that the budget plan payments satisfy the "temporal relationship" test

articulated by the *City Sports* court, but also concludes that the broader approach taken by the

*WW Warehouse* court better serves the legislative purpose of §507(a)(7) to protect powerless

consumers.  The Claimants did not make the budget plan payments as "the ultimate purchase,"

and in fact did not receive goods or services at the time such payments were made.  Rather, like

the gift certificates at issue in *WW Warehouse*, the Claimants expected Worley & Obetz to apply

the payments made toward the ultimate purchase, which was the fuel to be delivered to their

homes.  The fuel was never delivered, leaving the Claimants out the money they had paid

expecting that it would be.  This would seem to be akin to the lay-away plan consumers, service

contract consumers, and gym membership consumers left "holding the bag" with whom

Congress was concerned when enacting §507(a)(7).  The Court therefore rejects the Trustee's

argument that the transaction was complete when Claimants made the budget payments because at that time, Claimants received the right to receive fuel.  Neither this argument nor the result proffered by the Trustee serve the purpose of §507(a)(7), which is to give priority in the distribution of a bankrupt business's assets to consumers who make an advance payment for goods or services from the business but never receive them before the business files for bankruptcy.

For these reasons, the Court finds that the budget plan payments the Claimants made to Worley & Obetz constitute "deposits" as required by §507(a)(7).  The Court therefore finds and concludes that the Claims are entitled to priority status under §507(a)(7).

## IV.   CONCLUSION

For the reasons discussed above, the Court will sustain in part and overrule in part the Trustee's Objections.  The Court will sustain each of the Trustee's Objections in part on the grounds that the Claims are not entitled to administrative priority under §503(b)(1).  The Court will, however, overrule the Trustee's Objections in part because each of the Claims is entitled to priority status pursuant to §507(a)(7).

An Order consistent with this Memorandum will be entered.

Dated: February 27, 2020

_____
MAGDELINE D. COLEMAN
CHIEF U.S. BANKRUPTCY JUDGE

William J. Burnett, Esquire
Flaster/Greenberg, PC
1835 Market Street, Suite 1050
Philadelphia, PA 19103

Jesse M. Harris, Esquire
Jason C. Manfrey, Esquire
Michael G. Menkowitz, Esquire
Magdalena Schardt, Esquire
Fox Rothschild, LLP
2000 Market Street, 10th Floor
Philadelphia, PA 19103

David G. Crooks, Esquire
Fox Rothschild LLP
5420 Lyndon B. Johnson Freeway, Suite 1200
Dallas, TX 75240

David P. Adams, Esquire
United States Trustee
Custom House
200 Chestnut Street, Suite 502
Philadelphia, PA 19106

Sheila Pringle
217 East Main Street
Mountville, PA 17554

Sandra L. Rapp
202 Hemlock Road
Ephrata, PA 17522

Jeffrey Kurtzman, Esquire
Kurtzman Steady, LLC
401 S. 2nd Street, Suite 200
Philadelphia, PA 19147

Derek J. Baker, Esquire
Brian M. Schenker, Esquire
Reed Smith LLP
Three Logan Square, Suite 3100
1717 Arch Street
Philadelphia, PA 19103

James F. Grenen, Esquire
Brian M. Kile, Esquire
Grenen & Birsic, P.C.
One Gateway Center, 9th Floor
420 Ft. Duquesne Boulevard
Pittsburgh, PA 15222

David M. Feldman, Esquire
200 Park Avenue
New York, NY 101066

Berkshire Bank
386 Main Street
P.O. Box 15020
Worcester, MA 01615-0020

Paul Barnes
Diesel Direct
74 Maple Street
Stoughton, MA 02072